Mr. Young, let me start you off on a place where you may not expect to go, but I'm going to ask you a question that I'm concerned with, whether the federal courts have any jurisdiction over this matter. Understood, Your Honor. The case was removed to federal court on the grounds of Section 301 preemption? I realize that, but at the time it was removed, there was only a single count left in the case. That is correct. But the contract claim was dropped, and the amended complaint, which was in effect at the time the notice of removal was filed, contained only the wage act claim, and that doesn't require, there's no plausible basis for saying that the wage act claim required an interpretation of the CBA. The overdue PTO and ESL had already been paid. That is correct, Your Honor. So there was no dispute as to the amounts. The only dispute was as to whether the penalty provisions, the trouble damages and related provisions of the wage act, applied to this situation. And the collective bargaining agreement had no bearing on that. That's a question of state law. That's correct, Your Honor, as the case developed. As the complaint was initially pleaded, I would assume that there was... I'm talking about as the complaint stood when you removed it. Correct, Your Honor. When it was initially pleaded. Yes, Your Honor. As the time the complaint was removed... What was the plausible question? The plausible question was whether the plaintiff was seeking only penalties on the amount of ESL that had been paid, or whether she was seeking further payout of ESL amounts, which would require reference to the collective bargaining agreement. Well, I'll have to think about that. That strikes me as a little counterintuitive since she's never made a claim for anything beyond what the employer voluntarily, albeit in her view, belatedly paid. That is correct, Your Honor. She has not made that claim, and it has been confirmed through discovery that those were the amounts that she sought. I must tell you that with... I mean, I'll ask the plaintiff's attorney these same questions, but with the acquiescence of my colleagues, if I have it, I would like some supplemental briefing on this. Would that be satisfactory, Judge Dorough? Absolutely. Dorough, a good point that I certainly hadn't thought about. If counsel on both sides within ten days will file supplemental briefs not to exceed ten pages per side, addressed solely to the question of jurisdiction, it would be much appreciated, because I know you all understand that even though the jurisdiction can't be waived or conferred by estoppel, and we've got an obligation sua sponte to ensure our own jurisdiction. So those proffers from both sides would be appreciated. Of course, Your Honor. And just for my own clarification, will the briefing be in the form of the briefs that were already filed or more of a motion argument? Why don't you follow our ordinary briefing format in terms of typeface and things of that sort, but you don't have to divide it into sections the way you would in ordinary briefs, just simply the argument on why this court has jurisdiction, if indeed you still contend that we do. Why the federal courts have jurisdiction. Of course, Your Honors. Thank you. So this case presents as court a question of statutory interpretation. The timeline is really undisputed. On March 5th of 2016 was the plaintiff's last day of work with Stewart. On March 8th, she filed her initial lawsuit in this action, serving, among other claims, a claim under the wage act. On March 10th, Stewart paid approximately $12,000 of PTO, which was the plaintiff's accrued time as of her separation. On the 16th, March 16th, Stewart paid another approximately $2,400 in extended ESL payments, which again is what the plaintiff had been claiming. And on March 22nd, the plaintiff received permission from the Attorney General's Office to pursue a private civil action under the Massachusetts wage act. Doesn't this all turn on what the word complaint means in the phrase after the bringing of the complaint? Because if the complaint means the complaint filed with the AG, then you're out of luck. But if it means the complaint that the plaintiff filed to commence a civil action, then you have an argument that we should regard that as a melody as filed too soon. That is correct, Your Honor, and I would submit it is the latter situation and not the former. Let's go back to the language of the statute. The language of the statute describes what the employee need do and can do and refers to 90 days after the filing of a complaint with the AG and then refers to initiating a civil action. So the language of the document in terms of the statute in terms of describing the plaintiff's activity seems to describe the filing with the AG as the complaint. And if that's the case, then you lose. Yes, Your Honor, but I believe that is not the case because the language of where the defense comes from for pre-complaint payment of wages is in the portion of the Attorney General's authority to file a civil action. As the Claremont case recognized, the plaintiff's civil action is a derivation of the Attorney General's public right of action, and therefore the same defenses apply in a private suit as would apply in an Attorney General's suit. Help me, what's the provision that you're relying on that the plaintiff need wait 90 days after giving notice to the AG or filing what the statute says is a complaint with the AG? What's the purpose of that? The purpose is to give the Attorney General's office the first opportunity to enforce the Wage Act before a private civil action is pursued. Okay, that makes sense to me. That might suggest then that if someone violates it by filing a complaint precipitously, that the AG could go in and have that dismissed or stayed as interfering with the AG's prerogatives. But do you have standing to complain about it? I think we do in this case, Your Honor. It wasn't intended to facilitate or provide any benefit. Any benefit to your client would have just been this collateral chance that it might get more time if the AG didn't move fast, to hang on to the money of the plaintiff without paying any interest. Yes, Your Honor. The prejudice to my client is the inability to raise the defense of pre-complaint payment of the Wage Act. No, no, no. The question is why you should have that defense. It was why you should be able to complain that the complaint was filed. You clearly didn't pay until after the lawsuit was filed. So the question is why should you have standing to say that we should disregard the filing of the lawsuit as precipitous because it interfered with the interests of the Attorney General might have in controlling things. I would submit, Your Honor, it's because that's what the legislature has commanded in the Wage Act. The legislature has commanded that a civil action may not be brought until a party, number one, files with the Attorney General's office, and number two, either waits 90 days or receives permission sooner from the Attorney General. Now that did happen in this case. The plaintiff received permission by March 22nd. But by that time, Stewart had paid all of the wages that plaintiff now claims. And therefore, under the terms of the statute, Stewart is entitled to assert the defense of pre-complaint payment of wages. And plaintiff cannot block that defense by prematurely filing in violation of what the plain terms of the statute are. There's no reading of the statute that would enforce all of his terms but allow the outcome that plaintiff seeks in this case. And it's consistent with the purpose of the Wage Act as well. Because again, the purpose is to get the wages in the employee's hands as soon as possible. And if the employer has, albeit a short grace period, if you will, to pay those wages before the employee has to resort to the courts, the legislature has decided the employer can assert the defense to the significant penalty. But the legislation gives no assurance of any grace period whatsoever, does it? It does not because there's no notice requirement to the employer. Right. But the statute does provide for a pre-complaint payment of wage defense that a plaintiff cannot afford. Thank you, Your Honors. Thank you. Mr. Rice, good morning. Good morning. Can I start you in the same place I started your brother, questioning our jurisdiction? Well, you simply removed it and they went forum shopping and we were happy to buy it, Your Honor. Well, yeah, except that's not an answer. I mean, you have the same, all counsel and the court have an obligation to make sure you're in a court with proper jurisdiction. You have a right to move to remand for whatever reason you elected not to do that. All right? So, like it or not, on this issue, you and the defendant are in the same boat. I understand the issue, Your Honor. What I do know and what I anticipate briefing is that the PTO and the ESL were the products of collective bargaining. That's true, but that's exactly the situation that the Supreme Court faced in Levitas with the California statute and they said no preemption in that situation where the only question is on the interpretation of the state penalty statute. Well, typically what I've encountered before in cases like this is that the preemption argument gets raised as another defense. And I anticipated that would happen here. The first argument, and I don't know if there was going to be a subsequent argument, was that under the statute you're out because you filed too early. But anticipating, and I've seen it with these wage claims, I've represented more than a few people under this law. That happens. Yeah. It's hard to see in this case, given the posture of this case, how any preemption argument could plausibly be raised. And, of course, indeed, none was. Well, I would agree with that, but they are raised and it's usually on a motion to dismiss. So could you help me on two procedural issues? You filed a complaint and then before the removal you served on opposing counsel and amended pleading, dropping the contract claim? We did because she had been paid on the contract claim, so we anticipated that. And was that filed with the state court at the time of the removal? Had it been filed with the state court? I believe it had. And then secondly, they answered in federal court then, presumably? I believe we got a motion to dismiss before we got an answer. Okay. And did the motion to dismiss rely on federal preemption? No, the motion to dismiss was based on the arguments you've heard today. Continuing on, and I'm just picking up something my brother said in his argument. The plaintiff can think, or the appellee can think of a great way for this court to come up with a ruling that will meet what my brother says the objectives of the payment of wages law are, which is to get the money in the employee's hand as soon as possible. I don't beat up all this decision because what it says, and this is what the Supreme Judicial Court has said, is that what the statute also says is that payment made after the filing of a complaint is not an offense to a wage act claim. Now, in the DiPiante decision, and it has practical application to somebody who's in the practice of representing people under this law that I do, the Supreme Judicial Court held that getting the right to sue letter is not a jurisdictional prerequisite to bringing suit. And the analysis that followed from that, and this is important, based on the argument that Stuart has made here, the Attorney General's Office is not an adjudicatory agency when it comes to these claims. All they do is get notice of them, and when you get your right to sue letter really depends on, I believe, how many requests are on the stack of the person that sends them out. So the district court quite correctly decided to exercise jurisdiction over this particular case. But this isn't a, the question here isn't a question of the exercise of jurisdiction. The argument, as I understand it, that Stuart is making is not a jurisdictional argument. It's that under the statutory scheme, the claim approved, that if you don't let the 90-day period run, then claim approval by the Attorney General should be a condition preceding to the bringing of suit, not as a jurisdictional matter, but just as a matter of effectuation of the state statute. That was an issue that wasn't before the SJC and Dipianti because there had been a waiver of the defense of payment in the Dipianti case. So the only course left open to the defendant there was to argue that it was a jurisdictional requirement and couldn't be waived. That's not our situation. There's no waiver here. The question is, is it a condition preceding? The statute specifically says that late payment shall not be set up as a defense after the filing of a complaint. So the complaint was filed. But the statute also says that if the complaint is going to be filed sooner than 90 days, which was this case, that you'll obtain the consent of the Attorney General. And the argument is made that the logical implication of that is that that consent will be obtained first, not obtained prior to suit, not after suit. But in Dipianti, the court had to consider the 90-day language because the plaintiff, the lead plaintiff in the class, had never even got an authorization letter, even filed an administrative complaint. So if that were true, that whole case is thrown out. And Judge Wolf did decide that it had been waived, but when he certified the question to the SGC, he asked specifically, is there jurisdiction over this claim because this hasn't been done? And the answer was no. Now, when this decision was made, everybody in the plaintiff's bar in these employment cases said, and there's plenty of commentary about this out there, watch out. You don't need the right to sue letter. You can go to court right away. There's no waiting for that letter to come. So Ms. Lawless, who'd worked 48 years for the Kearney Hospital, got the abrupt termination letter when she tried to come back to work, comes to an office and she's owed money. She gets to file her complaint, and they pay late. There's no doubt about that. And there's no 90-day safe zone, and it certainly doesn't exist. The 90-day safe zone or the 90-day period doesn't exist as a way to encourage payment. If you don't pay before the complaints file, you're violating the law. I think you're saying we should interpret the statute exactly as we would if it had no provision in it whatsoever saying that she needed to wait 90 days. But it doesn't say she has to wait 90 days. Well, if it had, it strikes out the whole clause. You're saying we should interpret it that way. To reconcile it with the SJC's decision, I think you have to, because if she doesn't have to wait to file a complaint or for the court to exercise jurisdiction, what does the 90 days have to do with anything? The reason she doesn't have to wait is because the defense can be waived. And there was a waiver in that case. We don't have the waiver. But would you answer Judge Kavanaugh's question directly? It is true, is it not, that if we read the statute your way, we are saying the 90-day language in the statute is meaningless. It has no meaning. Because the plaintiff can file whatever she wants so long as she gets the Attorney General's consent. I think what the SJC says is, as long as she's noticed. Well, I don't know what the SJC says. What the statute says. All right? You and I just aren't going to agree as to whether the DPRP is in point or not. So let's talk about the statute. Is there any meaning left to the 90-day provision on your interpretation of the statute? It's not a defense, but I don't... What meaning does it have? Why would anyone ever wait? I don't think anybody does have to wait, Your Honor, and Ms. Collins didn't wait. Well, suppose the AG didn't want you to wait, and you filed it, and the AG came in and said, hey, I'm still looking at this. I need my full 90 days. Couldn't the AG stay it? I'm not sure whether the AG could exercise that power or not, Your Honor. What I can tell you is a practical matter. I'm not asking a practical question. I'm saying does it... I'll withdraw the question. Okay. Thank you. Thank you.